No. 18,955.

E. P. DUNLAP, *Appellee*, v. THE CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

NEGLIGENCE—*Cattle on Railroad Crossing—Inconsistent Special Findings—New Trial*. Where upon a trial special questions of fact are submitted to a jury to be answered, and answers to any such questions are returned which are materially irreconcilable and inconsistent, a judgment based thereon should be set aside and reversed.

Appeal from Norton district court; WILLIAM S. LANGMADE, judge. Opinion filed October 10, 1914. Reversed.

*Paul E. Walker, Luther Burns*, both of Topeka, and *L. H. Thompson*, of Norton, for the appellant.

*L. H. Wilder*, of Norton, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This action has been tried twice in the district court, and this appeal is from the second trial. The judgment on the former trial was in favor of the appellee, an appeal was taken to this court, and the decision in the case is reported in 87 Kan. 197, 123 Pac. 754. The judgment was reversed and the case remanded for a new trial.

At the time of the accident the plaintiff, with two assistants, was driving 78 head of cattle along the north-and-south highway which crossed the defendant's tracks, as appears by the evidence in this case, 150 to 175 feet south of the Burlington track in Norton county. He was approaching the railroads from the north, and when 12 or 15 rods north of the Burlington tracks he heard a train coming from the west upon the defendant's railroad and stopped the cattle. The tracks of each railroad at this point are upon grades five or six feet above the general level. This train on the defendant's track was known as the "Jersey." After the Jersey had passed, the plaintiff testifies that he was at the head of the cattle, 12 or 15 rods north of the Burlington grade, and that he had a clear view of the defendant's track from the crossing to a cut about a half mile west; that he listened for an approaching train; that he neither saw nor heard any train, and could see no smoke of a train on the defendant's railroad; that he could have seen an engine if there had been one coming from the west at any point east of the cut.

He then caused the cattle to be again started. He rode across the Burlington track ahead of the cattle and, as they came on, he allowed a part of them to pass on in front of him as he was riding on his horse at the side of the highway. He further said that he did not go down to the Rock Island track to look after the Jersey had passed, because he had as good a view as if he had gone to the Rock Island crossing. Some of the cattle were right close to the Burlington track when he stopped them for the Jersey, and were 75 to 80 yards ahead of him before he saw the engine; that upon seeing the approaching engine he rode to the Rock Island crossing and attempted to separate the cattle, but a number of them were beyond this crossing. He also testified that the closest time that he had known one train to follow another on the defendant's tracks was ten minutes.

There seems to be practically no dispute in the testimony thus far, that a part of the cattle had gone over the Rock Island tracks before the plaintiff noticed a locomotive coming. It was just coming out of the cut about a half mile west of the crossing. The evidence on the part of the plaintiff is, in substance, that there was a clear view on the defendant's track from the time the engine left the cut, about a half mile west, up to the crossing. The engineer testified that the cut is about a half mile west of the crossing, but that the whistling post is about eighty rods west; that he first saw the cattle when he was forty rods from the crossing, and then saw two head come up on the track and cross over; that when the two head came up on the track he shut off the engine and set the brakes; that when the cattle left the tracks he released the brakes and opened the engine and went on at the usual speed, or nearly so; that he did n't see any more cattle until he was close to the crossing, when he saw the herd; that he then put on the brakes and the emergency, and did the best he could to stop.

The jury in one finding said they thought the cattle were constantly crossing the Rock Island track in full view of the engineer as the locomotive passed from the cut to the highway; also, that they believed the engineer saw the cattle on the crossing from the time he entered the straight track until he reached the crossing. This amounts to a finding of the facts which the jury say "we think" and "we believe," also it amounts to a finding of negligence on the part of the engineer, as the jury also find that he did nothing in time to avoid injury to the cattle. The words "think" and "believe" here are evidently used synonymously. A jury can properly find only what they think or believe from the evidence, and it will be presumed they found what their language indicates.

If the finding of the jury in answer to question 8, submitted by defendant, viz., that the defendant was negligent in encroaching upon the time that should

elapse between the passage of the Jersey and the lone engine, be construed as the only finding of negligence, it conflicts with other findings.

Moreover, it is a question of law rather than of fact how soon one train may follow another upon the same track without negligence.

One seeking to cross the railroad track, even if he is familiar with a rule of the company specifying the time between trains, can not rely thereon. (*Bush v. Railroad Co.*, 62 Kan. 709, 64 Pac. 624.)

The jury found that the cattle were driven along the highway in the way cattle are usually driven in such cases, and that the plaintiff was not negligent in any way in the management thereof.

As a question of fact, the shortness of time within which the lone engine followed the Jersey, found as the only negligence of the defendant, is inconsistent with the finding that the engineer had a clear view of the Rock Island crossing from the time the engine came out of the cut a half mile distant, saw the cattle continuously passing over the crossing, and, notwithstanding this, he ran the engine over and killed several of the cattle. The engineer's evidence shows that the engine could be and was stopped within a much shorter distance.

Where upon a trial special questions of fact are submitted to a jury to be answered and answers to any such questions are returned which are materially irreconcilable and inconsistent, a judgment based thereon should be set aside and reversed.

The judgment is reversed and the case is remanded for a new trial.

BURCH, J. (dissenting) : When asked to specify in what respect the defendant was negligent, the jury said it was in encroaching on the time that should have elapsed after the Jersey passed. This finding negatived all the claims of negligence relied on for recovery. Under the well-settled law of this state encroachment

on the time of the Jersey was not negligence at all, and under numerous other decisions of the court which have not heretofore been departed from judgment should be ordered for the defendant.

Mr. Justice PORTER concurs in this dissent.